# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Jonyse Johnson | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 6517 |
| | ) | |
| PS Illinois Trust, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant PS Illinois Trust's ("PSI")
motion for summary judgment. For the reasons stated below, we grant in part and
deny in part the motion for summary judgment.

## BACKGROUND

Plaintiff Jonyse Johnson ("Johnson") alleges that in July of 2001 she entered
into a contract with PSI for the storage of her possessions in a storage locker.
Johnson alleges that in 2001 she made monthly payments to PSI until the end of the
year when she missed two payments. Johnson claims that on December 5, 2001, she
received a letter from PSI informing her that she had until January 3, 2002, to make

1

her payment in full and prevent PSI from auctioning off Johnson's possessions in the storage locker. Johnson further alleges that on January 2, 2002, she paid part of her past due payments in cash and tried to pay the other portion by check, but the PSI property manager refused to take the check. According to Johnson, she was told to return on the morning of January 3, 2002, and pay the remainder of the past due payments. Johnson claims that she called PSI at approximately 9:45 a.m. on the morning of January 3, 2001, and told the PSI property manager that she was on her way to the PSI storage facility with the remainder of her past due payments. Johnson claims that she arrived at 11:10 a.m. and was told that her possessions had already been auctioned off. In Johnson's second amended complaint, she includes two claims for declaratory and injunctive relief under the declaratory judgment act, 28 U.S.C. §2201, in which Johnson seeks a declaration that the Illinois Self-Service Storage Facility Act ("Storage Act"), 770 ILCS 95/1, *et seq.* is unconstitutional (Counts I and II). The second amended complaint also includes a negligence claim (Count III), a breach of contract claim (Count IV), a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Act, 815 ILCS 505/1 *et seq.* ("Fraud Act")(Count V), and an Intentional Infliction of Emotional Distress claim ("IIED")(Count VI). PSI now moves for summary judgment on all claims.

## LEGAL STANDARD

2

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine" issue in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the

3

non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Statement of Material Facts Objections

Pursuant to Local Rule 56.1, Johnson was required to respond to PSI's statement of material facts. However, instead of responding to many of PSI's facts, Johnson moved to strike the facts. First of all, to the extent that Johnson desired to move to strike such facts, the proper manner to do so would be in a formal motion rather than by incorporating the various objections into her Local Rule 56.1 response. However, as we shall explain below, regardless of the fact that Johnson did not file a proper motion to strike, Johnson's objections lack any merit. We shall address a few pertinent examples below.

#### A. Paragraph 6 of Statement of Material Facts

PSI asserts in Paragraph 6 of its statement of material facts that the storage contract between PSI and Johnson contains certain language indicating that PSI could reserve the right to require that payment be made by cash, certified check, or money order. ( SF 6). PSI also contends that Johnson testified that she read and initialed the paragraph. (SF 6). Johnson disputes Paragraph number 6 claiming that

the paragraph contains legal arguments and multiple facts. ( R SF 6). Paragraph 6 does not contain legal arguments. Neither does the paragraph contain an excessive amount of facts. Nothing limits a party to providing only one fact per paragraph under Local Rule 56.1. The key point is that Johnson does not offer a legitimate dispute of the fact that the clause referred to by PSI was included in the storage contract between PSI and Johnson. PSI has also offered as an exhibit a copy of the loan document which contains the clause that is now disputed by Johnson. (Hatch Affdvt. PS 000003).

### B. Paragraph 14 of Statement of Material Facts

PSI asserts, in its statement of material fact Paragraph number 14, that in October of 2001 Johnson presented two personal checks to PSI for rent payments and that the checks were returned for insufficient funds. (SF 14). Johnson disputes the facts arguing that the facts are hearsay because PSI cites "only to its own records, for which no foundation has been provided." ( R SF 14). However, Johnson fails to explain why such facts would be hearsay. PSI cites in support of its facts the affidavit of Timothy Hatch ("Hatch") who was employed as a District Manager for PSI in 2002, and who claims to have personal knowledge of the facts regarding Johnson's tenant file. (Hatch Affdvt. Par. 1). Further, attached to the Hatch affidavit are business records kept by PSI that show that Johnson paid her rent with two checks on October 18, 2001, and that the checks were returned on

November 17, 2001. (Hatch Affdvt. Ex. PS 000010). Johnson has failed to show that the above evidence would be inadmissible at trial and thus, in the absence of a proper citation by Johnson to support her denial of Paragraph 14, the paragraph is admitted pursuant to Local Rule 56.1. Local Rule 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003).

## C. Paragraph 43 of Statement of Material Facts

PSI asserts, in Paragraph 43 of its statement of material facts, that Johnson's psychiatrist took notes during his sessions with Johnson in 2002 and that the notes reflect that Johnson talked about what was causing her stress, but she did not mention the sale of her personal property by PSI. ( SF 43). Johnson responds to paragraph 43 by stating "Undisputed." ( R SF 43). However, Johnson proceeds to also point to other evidence and explain her admission. Such additional legal argument in a Local Rule 56.1 response is improper.

## D. Paragraph 39 of Statement of Material Facts

PSI asserts, in Paragraph 39 of its statement of material facts 39, that Johnson did not begin her job with Avon until four months after the sale of her property. ( SF 39). Johnson responds to Paragraph 39 by acknowledging that "Plaintiff's hire and start dates are undisputed." ( R SF 39). However, Johnson also objects to the start date referred to in Paragraph 39 arguing that such a statement is legal argument.

Johnson is incorrect. Whether or not Johnson started her job four months after the sale is a factual issue and is not a legal issue. Johnson thus admits, pursuant to Local Rule 56.1, that she began working for Avon four months after PSI sold her personal property.

## II. Storage Act Claims (Counts I and II)

PSI argues that it is entitled to summary judgment on the Storage Act claims because Johnson has not alleged any state action. Johnson alleges that the Storage Act is "unconstitutional under the due process clause of the Fourteenth Amendment to the Constitution of the United States, both on its face and as applied." (SA Compl. Par. 27). Johnson specifically contends that the Storage Act is unconstitutional because it "provides no adequate post-deprivation remedies, nor does it afford adequate notice prior to sale." (Ans. SJ. 2). PSI argues that Johnson's Storage Act claims fail because there is no evidence that shows a state action to support such claims. In support of PSI's position, PSI cites *Malone v. Illinois*, 2001 WL 1803656 (S.D. Ill. 2001) for the proposition that "[i]t is well established that purely private action is immune from the restrictions of the Fourteenth Amendment." *Id.* at *3. PSI also cites *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F.Supp. 1460 (N.D.Ill. 1997) for the proposition that "[s]tate action exists 'only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'" *Id.* at 1468 (quoting *Blum v. Yartesky*, 457 U.S. 991, 1004

7

(1982)).

Johnson argues in response that in *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 621-22 (1991), the United States' Supreme Court established three separate "tests" for determining whether or not there is a state action. (Ans. SJ 3). In *Edmonson* the Court applied the "state-action analysis" established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). 500 U.S. at 620. Under such an analysis, the court must first determine "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority. . . ." *Id.* Secondly, the court must determine "whether the private party charged with the deprivation could be described in all fairness as a state actor. . . ." *Id.* As part of the second step in the "state-action analysis," the Court indicated that there are "certain principles of general application" which should be considered. *Id.* Johnson argues that the Court establishes three separate tests, but the Court refers to them as principles. *Id.* The principles that should be considered to determine "whether a particular action or course of conduct is governmental in character" are: "the extent to which the actor relies on governmental assistance and benefits," whether "the actor is performing a traditional governmental function," and whether "the injury caused is aggravated in a unique way by the incidents of governmental authority. . . ." *Id.* at 621. Johnson attempts to distinguish much of the case law cited by PSI on the grounds that the case law dealt with a different "test" enunciated in *Edmonson*, than the "test" that Johnson is seeking to proceed

8

under in the instant action. (Ans. SJ 3). However, the Court in *Edmonson* did not, as Johnson suggests, create three separate tests for state action. Instead the Court merely referred to them as "certain principles of general application," thereby indicating that the considerations were mere factors rather than separate and distinct tests. *Id.*

In *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978), the Court was presented with a situation that is similar to the one presented in the instant action. Specifically, In *Flagg Bros.*, the Court was presented with a state statute that authorized a warehouse owner to sell the goods being stored in the warehouse by the owner's customers. *Id.* at 151. The Court pointed out that "[w]hile as a factual matter any person with sufficient physical power may deprive a person of his property, only a State or a private person whose action 'may be fairly treated as that of the State itself,' . . . may deprive him of 'an interest encompassed within the Fourteenth Amendment's protection'. . . ." *Id.* at 157. The Court found that the state statute in question merely provided authorization to the defendant to sell property, but that "recognizing the traditional place of private arrangements in ordering relationships in the commercial world, . . . can hardly be said to have delegated to [the defendant] an exclusive prerogative of the sovereign." *Id.* at 160. The Court concluded by noting that the Court's "cases state 'that a State is responsible for the . . . act of a private party when the State, by its law, has compelled the act'" and that the Court "has never held that a State's mere acquiescence in a private action converts that

9

action into that of the State." *Id.* at 164. Similarly, in the instant action, the Storage

Act merely authorized and acquiesced in certain conduct by PSI. Johnson has not

pointed to evidence that would show that the State of Illinois compelled or coerced

PSI to act or was sufficiently involved in the sale.

Johnson also attempts to distinguish the cases cited by PSI arguing that in

those cases the plaintiff was seeking to hold individuals liable under 42 U.S.C. §

1983 ("Section 1983"), and Johnson is seeking to simply hold the Storage Act

unconstitutional. In *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999),

the plaintiffs made a similar argument "hoping to avoid the traditional application of

[the Court's] state-action cases. . . ." *Id.* at 50. In *Sullivan*, the plaintiffs

"attempt[ed] to characterize their claim as a 'facial' or 'direct' challenge to the

utilization review procedures contained in the Act, in which case, the argument goes,

[the Court] need not concern [itself] with the 'identity of the defendant' or the 'act or

decision by a private actor or entity who is relying on the challenged law.'" *Id.* The

Court in *Sullivan* rejected such an argument stating that the argument "ignores [the

Court's] repeated insistence that state action requires *both* an alleged constitutional

deprivation 'caused by the exercise of some right or privilege created by the State or

by a rule of conduct imposed by the State or by a person for whom the State is

responsible,' *and* that 'the party charged with the deprivation must be a person who

may fairly be said to be a state actor.'" *Id.* (emphasis in original). Thus, Johnson

likewise cannot avoid the state actor requirement simply by seeking to hold the

Storage Act unconstitutional on its face.

The Court in *Sullivan* stated that "[i]n cases involving extensive state regulation of private activity, [the Court has] consistently held that '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'" *Id.* at 52 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350 (1974)). The Court also noted that the "[f]aithful application of the state-action requirement in these cases ensures that the prerogative of regulating private business remains with the States and the representative branches, not the courts" and thus, private parties "will not be held to constitutional standards unless 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Id.* (stating "[w]hether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"). The Court in *Sullivan* also reiterated the principle from *Flagg Bros.* that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* Thus, since Johnson has failed to point to evidence that shows that a state action caused any deprivation of Johnson's rights, Johnson cannot prevail on her due process claim (Count I).

Johnson's second claim is based upon alleged violations of the Excessive

11

Fines Clause of the Eighth Amendment. However, the Eighth Amendment prohibits

stated action. *See e.g. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal,*

*Inc.*, 492 U.S. 257, 262 (1989). As is illustrated above, Johnson has not pointed to

sufficient evidence of any state action in the instant action. Specifically, the Eighth

Amendment Excessive Fines Clause restricts the government's power to impose

fines, but such a restriction does not restrict the award of money damages in a civil

action. *Id.* at 262-63. In the instant action, Johnson has not presented evidence that

shows that the State of Illinois imposed fines on Johnson or prosecuted Johnson for

violating the Storage Act. *See id.* at 263-64 (stating that the Excessive Fines Clause

"does not constrain an award of money damages in a civil suit when the government

neither has prosecuted the action nor has any right to receive a share of the damages

awarded."). Therefore, we grant PSI's motion for summary judgment on the Storage

Act claims (Counts I and II).


### III. Negligence and Breach of Contract Claims (Counts III and IV)

PSI argues that it is entitled to summary judgment on the negligence and

breach of contract claims (Counts III and IV). PSI argues that Johnson's negligence

and breach of contract claims are based upon the fact that PSI refused to accept

Johnson's personal check as payment for her past due rent. (SJ 5-6). PSI argues that

it cannot be found to have been negligent or to have breached its contract with

Johnson because the storage contract unequivocally provided that PSI reserved the

right to require payment to be made in cash, by money order, or by certified check. (SJ 6). Johnson responds by arguing that PSI's internal policy manual ("policy manual") indicated that PSI was supposed to accept payments made by personal check. (SAF 18). However, the policy manual also specifically states that the procedures which allow for payment by personal check, may not apply if the customer has given PSI bad checks in the past and that it is within the District Manager's discretion to decide whether or not to accept payment by personal check in such a circumstance. ( R SAF 18)(SAF Ex. 3). Johnson admits, pursuant to Local Rule 56.1, that prior to her final attempt to make a partial payment by personal check, Johnson presented PSI with two personal checks that were returned for insufficient funds. ( R SF 14). Thus, in summation, the policy manual provides the manager with discretion as to whether to accept payment by personal check if there has been a prior history of bad checks from a customer. Johnson has admitted, pursuant to Local 56.1, that she twice presented checks to PSI that were returned for insufficient funds. ( R SF 14). Thus, PSI's manager would have been acting within his discretion in refusing payment from Johnson by personal check. Johnson also admits, pursuant to Local Rule 56.1, that the contract that Johnson entered into with PSI provided that PSI could require payment by certified check, cash, or money order. ( R SF 6). Thus, in regards to the refusal by PSI to accept the partial payment by Johnson made by personal check, no reasonable trier of fact could find in favor of Johnson and we grant PSI's motion for summary judgment on that claim.

We note that the above analysis does not dispose of the entire negligence claim or the entire breach of contract claim. In addition to the refusal by PSI to accept the personal check of Johnson and the refusal to return her property, Johnson specifically alleges as part of her negligence and breach of contract claims that PSI is liable for selling her personal property. (SA Compl. Par. 39, 43). The determination of whether or not PSI was obligated to accept a personal check for payment, does not automatically resolve the issue of whether PSI breached the terms of its contract with Johnson by selling her property or was negligent by selling her property. What PSI could do with Johnson's property while holding it is a separate issue from whether PSI was obligated to accept her payment and return the property or control of the storage space where the property was located.

PSI does present a cursory argument in its reply regarding the propriety of the sale of Johnson's personal property. (Reply 8). However, a party cannot introduce new arguments for the first time in its reply brief and thereby avoid giving the opposing side an opportunity to respond to the arguments. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir.1997)(quoting *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir.1996) for statement that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *Weizeorick v. ABN AMRO Mortgage Group, Inc.,* 2004 WL 1880008, at *2 (N.D.Ill.2004)(holding that "[i]t is elementary that parties may not raise new arguments or present new facts in their reply, thus depriving their opponent of the opportunity to respond.").

Also, regardless of the fact that PSI did not present its arguments regarding the sale of Johnson's personal property, there are clearly other legal issues not addressed by PSI in its motion and factual disputes that must be resolved by the trier of fact. For instance, Johnson claims that she did not realize that PSI would not accept a check when Johnson attempted to make a partial payment by check the day before the auction. PSI points to the contract language that allows for PSI to demand cash or a money order or certified check, but PSI also acknowledges that its policy was to allow the manager discretion to accept personal checks. It has not been resolved the extent that Johnson was familiar with the policy of accepting checks and whether she was informed that no future checks would be accepted by PSI after her two prior checks had been returned for lack of funds. If Johnson had a justifiable belief that she could have paid by check on the date before the sale, another unresolved issue is whether PSI could go ahead and sell her property the morning after she attempted to make her payment after instilling the belief in Johnson that she could pay by check. In fact, PSI admits that prior to the refusal of Johnson's payment by check PSI had accepted checks from Johnson. ( SF 14). PSI has not shown that Johnson was clearly informed that no more payments could be made by check. Further, according to PSI's policy manual the decision was likely made by PSI's manager on the day before the sale when Johnson tendered the payment.

Another issue left unaddressed by PSI is the effect of the alleged statements

made by its employees to Johnson on the phone while she was en route to the PSI

facility on the day of the sale. Johnson testified at her deposition that she called

PSI's office several times on the phone while she was in route to the PSI facility on

the day of the sale and spoke with employees of PSI. (Johnson dep. 123). Johnson

claims that she kept asking: "Where are you guys in terms of my stuff?, Where's my

stuff?" (Johnson dep. 123). Johnson claims that she informed the PSI employees

that she was on her way and had the cash with her to pay and she was told "Oh well,

as long as you get here, it's Okay." (Johnson dep. 123). Thus, first of all, there is a

factual issue as to whether the PSI employees made the above alleged statements.

Secondly, the trier of fact is presented with the issue of whether to draw an inference

from the above statements by PSI employees that they were telling Johnson that PSI

would not sell her property as long as Johnson arrived in a timely manner. If the

trier of fact were to draw such an inference, the effects of such a promise by PSI

employees upon PSI's contractual obligations and duties of care are issues that have

not been addressed by PSI in its motion for summary judgment.


## IV. Fraud Act Claim (Count V)

PSI argues that it is entitled to summary judgment on the Fraud Act claim.

Under Illinois law, for a Fraud Act claim, a plaintiff must establish: "(1) a deceptive

act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on

the deception; and (3) the occurrence of the deception during a course of conduct

16

involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). PSI argues that no reasonable trier of fact could find that PSI engaged in a deceptive act because Johnson knew that PSI had the right to demand payment in cash or by certified check or money order. PSI further argues that Johnson was notified that if she did not pay her past due rent within fourteen days, her personal property would be sold. PSI claims that Johnson acknowledges that she did not tender a proper payment to PSI by 10:30 a.m. on the day of the announced sale and that Johnson knew that her property was going to be sold. PSI argues that in the instant action "there is no evidence of any dishonest, unethical or fraudulent behavior." (Mem. 10).

Johnson responds to PSI's arguments by stating that "a reasonable jury could certainly conclude that Defendant's conduct in refusing Plaintiff's tender of payment and proceeding to sell off her goods amounts to an unfair act" and that "Plaintiff's allegations clearly support a claim for unfairness under the CFA." (Ans. 10-11). Johnson argues that she can prevail on the Fraud Act claim because of unfair conduct on the part of PSI. The Supreme Court of Illinois has recognized that, despite the above elements that apply to deceptive conduct, a plaintiff can recover under the Fraud Act for "unfair as well as deceptive conduct." *Robinson*, 775 N.E.2d at 960. In determining whether conduct is unfair conduct, a court should consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to

17

consumers." *Id.* at 961.

In the instant action, the sale of Johnson's property due to her failure to pay rent constitutes a forfeiture which is not favored under Illinois law. *See Raffel v. Medallion Kitchens of Minnesota, Inc.*, 139 F.3d 1142, 1145 (7th Cir. 1998)(stating that "forfeitures or penalties are disfavored under Illinois law."); *First Nat. Bank and Trust Co. of Evanston v. First Nat. Bank of Skokie*, 533 N.E.2d 8, 14 (Ill.App. Ct. 1988)(agreeing with the defendants that there is an established legal "principle that the law abhors a forfeiture and will not enforce a forfeiture clause in a contract if an injustice would result therefrom" and that "[c]onversely, it is well settled that the law enforces a contractual right to a forfeiture, when that right to the forfeiture is clear, unequivocal and will not result in an injustice."). Johnson claims in the instant action that her personal property, which had great sentimental value, was forfeited despite the fact that she was in route with the funds to pay her past due rent. Johnson further claims that employees of PSI made statements to Johnson on the phone which indicated that PSI was willing to wait for Johnson to arrive to avoid the necessity of her forfeiting her personal property. Thus, the Illinois public policy that disfavors a forfeiture and its rationale is directly at issue in this action. PSI argues that since it complied with the Storage Act, PSI followed Illinois public policy. However, PSI is not absolved from violating any public policy simply because it complied with the Storage Act.

We also conclude that the alleged misconduct of PSI would be oppressive. If

the trier of fact finds that PSI did not have a legal right to sell Johnson's personal property, then the sale of her personal property would be a drastic measure. Since PSI had exclusive control over her property, to sell her property without legal justification and deprive her any further opportunity to recover the property would be an oppressive act. It is clear that such sales and unfair conduct can wreak havoc on the lives of such consumers. Therefore, we conclude that the alleged misconduct in the instant action is the type of unfair conduct that can support a claim under the Fraud Act. Therefore, we deny PSI's motion for summary judgment on the Fraud Act claim.

## V. IIED Claim (Count VI)

PSI argues that it is entitled to summary judgment on the IIED claim. For an IIED claim, a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress." *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 651 (7th Cir. 2003)(quoting *Doe v. Calumet City*, 641 N.E.2d 498, 506 (1994)). For conduct to be extreme and outrageous the conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* PSI argues that there is not sufficient evidence to show that PSI

engaged in any extreme and outrageous conduct because PSI clearly had a right to refuse Johnson's partial payment. As is indicated above, it is not clear whether or not PSI had the right to sell Johnson's personal property when it did or whether its conduct was otherwise unfair.

However, Johnson has not pointed to any action by PSI that could be deemed by a reasonable trier of fact to be "beyond all possible bounds of decency." *Id.* There is evidence pointed to by Johnson that would allow a reasonable trier of fact to conclude for instance that PSI breached its contractual obligations and engaged in unfair conduct. However, there is not sufficient evidence that PSI employees engaged in any conduct that was "beyond all possible bounds of decency." *Id.* Thus, no reasonable trier of fact could conclude that such conduct was extreme and outrageous.

In addition, there is insufficient evidence for a reasonable trier of fact to conclude that PSI's alleged misconduct caused Johnson's severe emotional distress. Johnson admits as "undisputed" pursuant to Local Rule 56.1 that her psychiatrist testified from his notes taken from sessions with Johnson in 2002 and that he had questioned Johnson about the stress in her life. ( R SF 43). Johnson admits that nowhere in her psychiatrist's notes is there any reference to the loss of her personal property that was sold by PSI. ( R SF 43). Johnson admits pursuant to Local Rule 56.1 that her psychiatrist testified that if Johnson had indicated that her stress had been caused by the sale of her personal property it would have been included in his

notes. ( R SF 44). Johnson admits, pursuant to Local Rule 56.1, that she told her psychiatrist about a job that she held in 2001 with "Nestle," before the sale of her goods in January of 2002. ( R SF 46). Johnson admits that her psychiatrist testified that Johnson said that she was under stress because she had to take an unpaid leave of absence from her job at "Nestle" because of a disability. ( R SF 46). Johnson also admits that she told her psychiatrist that she found her commute to work stressful and that her job "exacerbated" her disability. ( R SF 46). Johnson also admits that her psychiatrist testified that when he first saw Johnson in 2002 he diagnosed her with a type of depression that she had been suffering from "for at least two years." ( R SF 52). In fact, Johnson admits that she had a history of emotional problems long before the sale of her property. ( R SF 49).

Johnson also claims that she lost her job at Avon due to the stress caused by the sale of her personal property. Johnson's damages theory in this action is in part based upon the lost income from her Avon job. However, Johnson admits, pursuant to Local Rule 56.1, that she was not hired until months after her property was sold. ( R SF 39). Johnson further admits that when she applied for the position with Avon in April of 2002 "she categorized her 'present health' as 'Excellent,'" and that she was able to complete an extensive interview process with Avon "without any emotional episodes." ( R SF 40). Johnson fails to point to sufficient evidence for a reasonable trier of fact to conclude that the sale of her personal property by PSI caused her such stress that it caused her to lose her job at Avon. Thus, no reasonable

21

trier of fact could find that PSI's alleged misconduct caused Johnson severe emotional distress. Based upon all of the above analysis, we grant PSI's motion for summary judgment on the IIED claim.

## CONCLUSION

Based on the foregoing analysis, we grant PSI's motion for summary judgment on the Storage Act claims (Counts I and II) and the negligence and breach of contract claims (Counts III and IV) to the extent that they are based upon the refusal of Johnson's payment by check. We deny PSI's motion for summary judgment on the negligence and breach of contract claims (Counts III and IV) to the extent that they are based upon the sale of Johnson's personal property. We also deny PSI's motion for summary judgment on the Fraud Act claim (Count V). We grant PSI's motion for summary judgment on the IIED claim (Count VI).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 17, 2005